## In re CLARK SMATHERS LAKEVILLE MANOR, LTD., d/b/a/ Singles Night Club, Inc., Debtor.

### Bankruptcy No. 881–81433–18.

United States Bankruptcy Court,
E.D. New York.

April 13, 1984.

Jules V. Speciner, Great Neck, N.Y., for Trustee.

Harvey L. Goldstein, Finkel, Goldstein & Berzow, New York City, for Committee of Unsecured Creditors.

Gary B. Sachs, Schwartz, Sachs & Kamhi, P.C., Carle Place, N.Y., for debtor.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

Trustee moves to reargue the denial of his application for double trustee's fees.

On April 28, 1981, the debtor, Clark Smathers Lakeville Manor, Ltd. ("debtor"), filed a voluntary petition under Chapter 11 of the Bankruptcy Reform Act of 1978 ("Code"). The debtor continued to operate its business as a debtor-in-possession pursuant to Section 1107 of the Code. Subsequently, on September 22, 1981, a creditor moved to dismiss or convert the Chapter 11 proceeding pursuant to 11 U.S.C. § 1112(b). At the hearing held on the motion on October 6, 1981, upon application of counsel for the Committee of Unsecured Creditors and upon consent of the debtor, James Barr was appointed trustee ("trustee") pursuant to Section 1104. Thereafter, the motion was withdrawn. Trustee took possession of the debtor's property on November 18, 1981, pursuant to an order of this court and remained in possession until April 4, 1983, on which date the assets of the debtor were sold.

On December 12, 1983, a hearing was conducted on *inter alia* trustee's application for interim compensation in the amount of $20,487.78. This sum was computed by doubling the sum of $10,243.89, which sum represents the maximum to which the trustee would be entitled under 11 U.S.C. § 326.[1] The trustee substantiated his request for double compensation on the grounds that he performed a series of services in addition to those required of a trustee under the Code. Transcript of December 12, 1983 ("Tr.") at p. 5.

By order dated December 15, 1983, the court denied the trustee's application for double compensation, awarding him the amount of $5,087.16, which sum represented the maximum compensation set under 11 U.S.C. § 326 reduced by the amount of $5,156.73 which the trustee had received

---

1. § 326. Limitation on Compensation of Trustee.

   (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in

   excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

upon a prior application for interim compensation.

On January 23, 1984, the trustee moved to reargue his motion for double compensation.

## MOTION TO REARGUE

At the hearing conducted on December 12, 1983, the trustee cited in support of his application the case of *In re Balsa Wood Co., Inc.*, 46 Am.B.R. (N.S.) 661 (S.D.N.Y. 1940), decided under the Bankruptcy Act of 1898 ("Act"). At such time, the court held that such case was not persuasive authority in the context of a fee application under the Code.

The trustee moves to reargue on the grounds that the court was incorrect in determining that the *Balsa Wood* case offered no guidance under the Code. After due consideration, the court grants trustee's motion to reargue. *See U.S. v. N.V. Nederlandsche Combinatie, Etc.*, 75 F.R.D. 473 (S.D.N.Y.1977).

## FINDINGS OF FACT

In *Balsa Wood*, the premise underlying the award of extra compensation to the liquidating trustee was that such trustee had performed extraordinary services not required under the Act. The trustee, in this case an operating trustee, justifies his request for double commissions on the same ground; that he has performed functions beyond the ordinary scope of those required of a trustee and beyond those required under the Code.

The trustee enumerates in the "Trustee's Second Interim Report" the services he claims substantiate such request. He refers to instances where he received telephone calls late at night and while on vacation, the fact that he approved and signed all of the debtor's purchase orders and checks, and the fact that he personally discharged and hired debtor's employees. He further states that he was forced to telephone various policing authorities to control a disruptive element of the business' clientele. Additionally, he was involved in proceedings with the State Liquor Authority ("SLA") with respect to obtaining the appropriate endorsement of debtor's liquor license. These proceedings were curtailed only upon the trustee's sale of the debtor's assets. Trustee's Second Interim Report at pp. 2–3.

■ The court finds that such services are within the scope of the responsibility of an operating trustee as contemplated by 11 U.S.C. § 1108 and thus do not justify the award, if permissible, of double compensation. In reaching this conclusion, note is taken that on November 13, 1981 this court signed an order authorizing the trustee's retention of a "managing agent," Daniel R. Bracciodieta, at the rate of $1,000.00 per week to manage and operate the debtor's business. The trustee does not elucidate why he was required to expend substantial amounts of time in supplementing the highly compensated services of this manager. Moreover, trustee has retained counsel who has apprised this court that he represented the debtor with regard to its litigation with the SLA. Petition for Allowance of Attorney for Trustee filed December 1, 1983 at 4. The trustee fails to disclose the necessity for or extent of his substantial involvement in this litigation.

In *Balsa Wood*, the case upon which trustee relies, the district court noted that the liquidating trustee travelled to Ecuador to obtain offers for the sale of shares of a corporation located in Ecuador. The case further discloses that the trustee was away from his office, as a consequence, for approximately eight weeks and that such extraordinary services enhanced the estate substantially. 46 Am.B.R. at 664–65. The facts of the instant case do not indicate that the trustee performed services of similar magnitude to those described in *Balsa Wood*.

## CONCLUSIONS OF LAW

Assuming *arguendo* that the facts of the case *sub judice* are analogous to those of *Balsa Wood*, the court is convinced that such precedent is inapposite to cases governed by the Code.

*Balsa Wood* was decided under § 72 of the Act which was amended in 1938 to provide:

> That neither the referee, receiver, marshal nor trustee, shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services as required by the act than that expressly authorized and prescribed by the Act.

Bankruptcy Act § 72, 11 U.S.C. § 112 (repealed 1978).

This section was interpreted by Judge Conger to authorize compensation for services performed that were not required under the Act. However, the drafters of the Code specifically deleted section 72 or a comparable provision from the statute. Section 326 of the Code which now governs trustee's compensation is captioned "Limitation on compensation of trustee," which is couched in similar phraseology to the caption of § 72 of the Act, "Limitation of Compensation of Officers of Court." From the foregoing, the court concludes that the failure of the drafters of the Code to include language similarly authorizing application by trustees for additional fees was intentional and therefore, no statutory predicate exists under the Code for compensation in excess of the statutory ceiling.

■ As a final matter, there is no basis found in *Balsa Wood* for the trustee's request for double compensation in the instant case. In *Balsa Wood*, the court awarded the trustee $714.02 in statutory commissions and an additional amount of $1,500.00 for his extraordinary services. The trustee here instead is apparently relying in justification of the amount of his request upon the language of § 48(c)(2) of the Act which provided:

> (2) Conducting Business.—Trustees who conduct the business of the bankrupts as provided in clause (5) of section 2 of this Act shall receive such amount as may be allowed by the court, but in no event to exceed twice the maximum allowance permitted by paragraph (1) of this subdivision c.

Bankruptcy Act § 48(c), 11 U.S.C. § 76(c) (repealed 1978).

Again, the legislative history to the Code makes clear that the concept of awarding operating trustees up to a maximum of twice their statutory allowance was initially considered and then rejected in the final draft and, thus, the current version of the Code. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 327 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, *reprinted in* Appendix 2, *Collier on Bankruptcy* (15th ed. 1983).

The basis for the framers' rejection of the concept of double compensation to an operating trustee is premised on the notion that it is equitable to compensate an operating and liquidating trustee at the same rate. While an operating trustee is required to manage the day to day operations of the debtor, the proceeds generated from the operations properly constitute a corpus against which his commissions will be measured. Thus, the operating trustee and liquidating trustee will each be compensated directly in proportion to the amount of assets he administers. To the extent an operating trustee brings additional funds into the bankruptcy estate, his compensation will be enhanced proportionately. *See* 4 *Collier on Bankruptcy*, ¶ 721.06 (15th ed. 1983).

Premised upon the foregoing findings of fact and conclusions of law, upon reargument trustee's motion is denied.

It is SO ORDERED.